ARS COUNSEL P.C.
Almuhtada Smith (SBN 263762)
asmith@arscounsel.com
515 S. Flower Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 293-3565

Attorney for Defendant Undefined Inc.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTANY XAVIER, an individual; and THRIFTS AND THREADS, INC., a California Corporation, | Case No. 323-cv-1483 |
| Plaintiffs, | **DEFENDANT UNDEFINED INC.'S NOTICE OF MOTION AND MOTION TO SET ASIDE ENTRY OF DEFAULT; MEMORANDUM OF POINTS AND AUTHORITIES, FED. R. CIV. P. 55(C)** |
| v. | |
| UNDEFINED INC., a Delaware Corporation; and DOES 1-10, inclusive, | Supporting declarations and Proposed Order Concurrently Filed |
| Defendants. | Complaint Filed: March 29, 2023 |
| | Hearing Date: September 21, 2023 |
| | Hearing Time: 2:00pm |
| | Courtroom: 2, 4th Floor |
| | Judge: Honorable Haywood S. Gilliam, Jr. |

# **TABLE OF CONTENTS**

<u>Page</u>

NOTICE OF MOTION AND MOTION………………………….…………….…......1

CONCISE STATEMENT OF RELIEF SOUGHT……………………………...…....1

MEMORANDUM OF POINTS AND AUTHORITIES...………………………….…......2

I.      STATEMENT OF ISSUES TO BE DECIDED AND SUMMARY OF ARGUMENT.....2

II.     STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY.....…........2

III.    ARGUMENT………………………………………………...…........4

    A.      Legal Standard…………………………...………………………4

    B.      Good Cause Exists For The Default To Be Set Aside On The Basis Of Excusable Neglect….........................…………………………………………6

    C.      Undefined Has Meritorious Defenses To This Action……………………....8

        1.      Copyright Infringement …….……………...……….........9

        2.      Publicity Rights Violations Based On California State Law ……........13

        3.      Claims Based On Lanham Act …………..……...…………........13

        4.      Unfair Competition And False Advertising Based On California State Law.........................................15

        5.      Procedural Defenses…………………………………….............18

    D.      No Harm Or Prejudice Will Result If The Default Is Set Aside …………….......20

    E.      Law and Public Policy Favors Decisions On The Merits ……………….....21

IV.     CONCLUSION …………………….………………………….…......22

## <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**

*Aiyegbusi v. Knight,*
    2008 WL 370619 (E.D. Pa., Feb. 7, 2008)…………………..…………………………...17

*American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.,*
    92 F.3d 57 (2d Cir. 1996)...................................................................................6

*AMF Inc. v. Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1979).............................................................................14

*Apple Computer, Inc. v. Microsoft Corp.,*
    35 F.3d 1435 (9th Cir. 1994)……………………………………………………………9

*Audio Toys, Inc. v. Smart AV Pty Ltd.,*
    2007 WL 1655793 (N.D. Cal., June 7, 2007) ...........................................9, 19

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n,*
    805 F.2d 663 (7th Cir. 1986)............................................................................12

*Bateman v. U.S. Postal Service,*
    231 F.3d 1220 (9th Cir. 2000)..........................................................................19

*Bill Graham Archives v. Dorling Kindersley Ltd.,*
    448 F.3d 605 (2d Cir. 2006).............................................................................10

*Bonita Packing Co. v. O'Sullivan,*
    165 F.R.D. 610 (C.D. Cal. 1995)........................................................................5

*Brady v. U.S.,*
    211 F.3d 499 (9th Cir. 2000)..............................................................................5

*Brother Records, Inc. v. Jardine,*
    318 F.3d 900 (9th Cir. 2003).............................................................................11

*Cairns v. Franklin Mint Co.,*
    292 F.3d 1139 (9th Cir. 2002)...........................................................................14

*Davis v. Musler,*
    713 F.2d 907 (2d Cir. 1983)..............................................................................19

*Derek Andrew, Inc. v. Poof Apparel Corp.,*
    528 F.3d 696 (9th Cir. 2008)............................................................................12

*Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*,
  840 F.2d 685 (9th Cir. 1988)..................................................................................5

*Falk v. Allen*,
  739 F.2d 461 (9th Cir. 1984)................................................................................19

*Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*,
  375 F.3d 922 (9th Cir. 2004).............................................................................4, 5

*Graham v. James*,
  144 F.3d 299 (2d Cir. 1998)..................................................................................9

*Haw. Carpenters' Trust Funds v. Stone*,
  794 F.2d 508 (9th Cir. 1986).............................................................................5, 8

*Jones v. Phipps*,
  39 F.3d 158 (7th Cir. 1994)...................................................................................9

*Kelly v Arriba Soft Corp.*,
  336 F.3d 811 (9th Cir. 2002)................................................................................11

*Klapprott v. U.S.*,
  335 U.S. 601 (1949).............................................................................................20

*Kodadek v. MTV Networks, Inc.*,
  152 F.3d 1209 (9th Cir. 1998)..............................................................................16

*Kwikset Corp. v. Superior Court*,
  51 Cal.4th 310 (2011)..........................................................................................16

*Lacy v. Sitel Corp.*,
  227 F.3d 290 (5th Cir. 2000)................................................................................19

*Laws v. Sony Music Entm't, Inc.*,
  448 F.3d 1134 (9th Cir. 2006)..............................................................................12

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014).............................................................................................13

*Madsen v. Bumb*,
  419 F.2d 4 (9th Cir. 1969)......................................................................................5

*Mattel, Inc. v. Walking Mountain*,
  353 F.3d 792 (9th Cir. 2003)................................................................................10

*Meadows v. Dominican Republic*,
  817 F.2d 517 (9th Cir. 1987)..................................................................................6

*Meeropol v. Nizer*,
    560 F.2d 1061 (2d Cir. 1977)...................................................................................10

*Mendoza v. Wight Vineyard Mgmt.*,
    783 F.2d 941 (9th Cir. 1986)…………………………….………………….4, 5, 9

*Nelson-Salabes, Inc. v. Morningside Development, LLC*,
    45 F.3d 1423 (10th Cir. 1995)……………………………………………………9

*Nunez v. Caribbean Int'l News Corp.*,
    235 F.3d 18 (1st Cir. 2000)...................................................................................10

*Owens-Illinois, Inc. v. T & N Ltd.*,
    191 F.R.D. 522 (E.D. Tex. 2000).............................................................................7

*Pincay v. Andrews*,
    389 F.3d 853 (9th Cir. 2004)..................................................................................6

*Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*,
    507 U.S. 380 (1993)................................................................................................6

*Quach v. Cross*,
    2004 WL 2862285 (C.D. Cal., Dec. 3, 2004).........................................................9

*Rockridge Trust v. Wells Fargo*,
    985 F.Supp.2d 1110 (N.D. Cal. 2013)...................................................................15

*Saxon v. Blann*,
    968 F.2d 676 (8th Cir. 1992)................................................................................11

*Schwab v. Bullock's Inc.*,
    508 F.2d 353 (9th Cir. 1974).........................................................................2, 20

*Seltzer v. Green Day, Inc.*,
    725 F.3d 1170 (9th Cir. 2013)..............................................................................10

*Shaeffer v. Califia Farms, LLC*,
    44 Cal.App.5th 1125 (2020)..................................................................................16

*Shloss v. Sweeney*,
    515 F.Supp.2d 1068 (N.D. Cal. 2007)...................................................................11

*Sims v. EGA Products, Inc.*,
    475 F.3d 865 (7th Cir. 2007)..................................................................................5

*Sony Corp. of America v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984)..............................................................................................11

*Standard Enterprises, Inc. v. Bag-It, Inc.*,
    115 F.R.D. 38 (S.D.N.Y. 1987)...............................................................................8

*Stewart v. Abend*,
    495 U.S. 207 (1985).............................................................................................10

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc.*,
    7 F.3d 1434 (1992)..............................................................................................17

*TCI Grp. Life Ins. Plan v. Knoebber*,
    244 F.3d 691 (9th Cir. 2001)........................................................................Passim

*Tri-Continental Leasing Corp. v. Zimmerman*,
    485 F. Supp. 495 (N. D. Cal. 1980)…………………………...…………...5

*U.S. v. Robertson*,
    45 F.3d 1423 (10th Cir. 1995)…………………………………………...…9

*Waifersong, Ltd. Inc. v. Classic Music Vending*,
    976 F.2d 290 (6th Cir. 1992)................................................................................5

*Wyle v. R J. Reynolds Industries Inc.*,
    709 F.2d 585 (9th Cir. 1983)……………………………...……………...21

## Statutes

15 U.S. Code § 1125(a)..................................................................................13, 19

17 U.S. Code § 504(1) and (2)..............................................................................12

28 U.S. Code § 1391(b) and (c)………………………………...……………18

Cal. Bus. Prof. Code § 17200...................................................................14, 16, 19

Cal. Bus. Prof. Code § 17500......................................................................16, 19

## Court Rules

Fed. R. Civ. P. 60(b)(1).....................................................................................5, 6

Fed. R. Civ. P. 9(b).........................................................................................15, 16

Fed. R. Civ. P. 55(c)………………………………………………...…Passim

Fed. R. Civ. P. 12(b)………………….....………………………………17, 18, 19

**<u>Treatises</u>**

Schwarzer et al., Rutter Group Practice Guide: Federal Civil Procedure Before Trial, Calif. & 9th Cir. Editions, Ch. 6-E, 6:164 (Thomson Reuters/West 2009)................................................................8

MOTION TO SET ASIDE DEFAULT

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on September 21, 2023 at 2:00pm in Courtroom 2, of the above-entitled Court located at 450 Golden Gate Ave., San Francisco, CA, 94102, and pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, Defendant UNDEFINED INC. ("Undefined") will and hereby does move the Court for an order granting to set aside the default entered against Undefined on May 19, 2023 and set a new deadline for Undefined to respond to Plaintiffs' pleading.

This Motion will be made on the grounds that the default was entered as a result of excusable neglect and is supported by Undefined's Memorandum of Points and Authorities attached below; the Declaration of Dorian Morris; the Declaration of Almuhtada Smith; the Proposed Order filed concurrently with this Motion; and any oral argument Undefined may present at any hearing on this Motion. The Motion will be based upon this notice, the current available files and records in this action, and any further evidence and argument that the Court may receive at or before the hearing.

## CONCISE STATEMENT OF RELIEF SOUGHT

Defendant Undefined respectfully requests the Court to set aside the default entered against Undefined on Docket No. 13 in this action on May 19, 2023. Furthermore, Undefined requests the Court to set Undefined's deadline to respond to Plaintiffs' Complaint twenty-one (21) days following the Court's granting of this Motion.

Dated:  June 26, 2023                                        ARS COUNSEL, P.C.


By:  /s/Almuhtada Smith
     ALMUHTADA SMITH


Attorney for Defendant
Undefined Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     STATEMENT OF ISSUES TO BE DECIDED AND SUMMARY OF ARGUMENT

This Court entered a default against Defendant Undefined on May 19, 2023. Docket No. 13. The main issue to be decided by this Motion is whether good cause exists to set aside that entry of default based on Undefined's excusable neglect.

Undefined will demonstrate its excusable neglect by showing that 1) it had a reasonable excuse for the default, 2) Undefined did not exhibit any culpable conduct, 3) Undefined has meritorious defenses to this action, 4) Plaintiffs will not be unfairly prejudiced by a setting aside of the entry of default, 5) this Motion has been timely and expeditiously filed, and 6) the presumption in favor of decisions on the merits and against defaults should operate in full force in these circumstances. *See TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696-701 (9th Cir. 2001); *Schwab v. Bullock's Inc.*, 508 F.2d 353, 355-356 (9th Cir. 1974).

### II.     STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY

Defendant Undefined is a self-funded, female-founded and Black-owned skincare company that offers a variety of non-toxic, plant-based, cruelty free beauty products designed to be inclusive, conscious and diverse. Undefined is a Delaware corporation with its principal place of business is in Los Angeles, California. Declaration of Dorian Morris ("Morris Decl.") ¶ 1. Plaintiffs filed the Complaint in this action on March 29, 2023. Declaration of Almuhtada Smith ("Smith Decl.") ¶ 3. Plaintiffs served Undefined's agent of service, A Registered Agent, Inc. ("Agent"), on March 31, 2023. Smith Decl. ¶ 4. A Response to the Complaint was due on May 2, 2023. Smith Decl. ¶ 5. Plaintiffs moved for entry of default on May 19, 2023 and the clerk entered the default on the same day. Smith Decl. ¶ 6.

Undefined and Agent have an agreement whereby, if a complaint is served on Agent, it will send Undefined's Founder/CEO Dorian Morris ("Ms. Morris") an email attaching that complaint. Here, however, Agent failed to notify Undefined when it received the Complaint for this action. Morris Decl. ¶ 9. Agent did not send Ms. Morris a digital copy or mail her a physical copy of the Complaint. *Id.* Undefined only became aware of the Complaint on June 7, 2023, when Ms. Morris discovered the Complaint in her Agent's online digital portal while investigating an unrelated matter. Morris Decl. ¶ 7, 9. Immediately after this discovery, Ms. Morris contacted attorney Corrine Irish, who then advised her to

seek legal counsel licensed in California. Morris Decl. ¶ 8. Undefined then attempted to locate a law firm in California to represent it in this action and contacted several law firms. On June 12, 2023, after a diligent search, Undefined retained Almuhtada Smith ("Mr. Smith") of ARS Counsel, P.C. to represent it in this matter and plans to mount a defense to this claim. Morris Decl. ¶ 11; Smith Decl. ¶ 1. On June 13, 2023, Mr. Smith contacted opposing counsel who did not agree to enter a stipulation to lift the default in this action which caused Mr. Smith to promptly file this Motion on Undefined's behalf. Smith Decl. ¶ 8, 9.

Undefined created R&R Sun Serum which features a diverse illustration on its product packaging that Plaintiffs alleges is a derivative of their copyrighted photograph. Plaintiffs allege that the use of this Illustration infringes upon a photograph that Thrifts and Threads registered with the Copyright office in March 2023 (the "Photograph"). Ms. Morris engaged Casielle Santos-Gaerlan ("Ms. Santos-Gaerlan"), an Asian-American independent illustrator based in Brooklyn, NY, to provide Undefined an Illustration to be used on the packaging of the R&R Sun Serum (the "Illustration"). Morris Decl. ¶ 3. Ms. Morris purchased the Illustration with the understanding that it did not violate the intellectual property rights of any third party was entirely original to Ms. Santos-Gaerlan. Morris Decl. ¶ 4. At the time of purchase, Ms. Morris believed the Illustration depicted an Asian-American woman, as this representation was consistent with a product that leverages ingredients from TCM (Traditional Chinese Medicine) and values of beauty, inclusivity and diversity. Morris Decl. ¶ 6. During the Illustration's subsequent use on the packaging and prior to this action, Ms. Morris did not know who Ms. Xavier was and has never seen, discovered, or followed Ms. Xavier's Instagram account. Additionally, Ms. Morris did not see the Photograph and did not know that the purchased Illustration was allegedly depicting or substantially similar to Ms. Xavier or her image and likeness. Morris Decl. ¶ 5.

Plaintiffs claim that they sent Undefined three notice to cease and desist letters, dated January 11, 2023, January 24, 2023, and February 7, 2023. Undefined did not receive any physical copies of these letters. Morris Decl. ¶ 13. These notice to cease and desist letters were not sent to the Agent. Undefined, through its Founder/CEO Ms. Morris, was not made aware of these letters until Mr. Smith advised her to speak with Ms. Santos-Gaerlan, where she discovered that the letters were addressed incorrectly and sent to Unidentified, Inc. located in Rowland Heights, California, a company that Undefined has no

knowledge of or affiliation to. Morris Decl. ¶ 12. At least one of the cease and desist letters was also sent to Ms. Morris' email, but went to a spam folder. As Undefined's Founder/CEO, Ms. Morris wears multiple hats as she is the company's only employee. Her daily tasks encompass business development/sales, marketing, product development, operations, logistics/supply chain, social media and customer service. Given that she touches every aspect of the business, she has multiple email accounts and does not normally check the spam folders. Morris Decl. ¶ 15.  After following Mr. Smith's instructions, Ms. Morris was able to only find an email containing one of the three cease and desist letters, dated February 7, 2023, in her spam folder on June 20, 2023. Morris Decl. ¶ 14.

On June 21, 2023, Ms. Santos-Gaerlan informed Ms. Morris that she created the Illustration in on around September 2019 and that she used multiple photographs and points of reference taken from Pinterest which did not include any mentions of or attributions to Ms. Xavier. According to Pinterest's Terms of Service section, any content posted grants Pinterest and its users a "non-exclusive, royalty-free, transferable, sublicensable, worldwide license to use, store, display, reproduce, save, modify, create derivative works, perform, and distribute the user content on the platform." Smith Decl. ¶ 11. Ms. Santos-Gaerlan's creative process involved putting images side by side to create and trace a general composition of the Illustration before adding color, highlights, shading, definition, additional details, and her distinct stylings. Morris Decl. ¶ 16. Ms. Morris does not regularly use Pinterest and has limited knowledge of how it works and is used. Morris Decl. ¶ 18.

### III.    ARGUMENT

Because Defendant Ms. Morris did not receive physical copies of Ms. Xavier's cease and desist letters and Agent did not notify of Ms. Xavier's Complaint, Ms. Morris was put on notice of this claim close to three months after the Complaint was filed, as described above. Undefined had no choice but to promptly file this Motion requesting the Court set aside the entry of default.

### A.  Legal Standard

Federal Rule of Civil Procedure 55(c) provides that an entry of default may be set aside upon a showing of good cause. Fed. R. Civ. P. 55(c). The Ninth Circuit's good cause standard for setting aside an entry of default is the same as setting aside default judgment under Rule 60(b), but the test is more generous to the party in default. *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375

F.3d 922, 925 (9th Cir. 2004). Thus, a party seeking to have a default set aside prior to the entry of judgment must only show good cause. "The different treatment of default entry and judgment by Rule 55(c) frees a court considering a motion to set aside a default entry from the restraint of Rule 60(b) and entrusts determination to the discretion of the court." *Haw. Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986); *see also Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986) ("The court's discretion is especially broad where . . . it is entry of default that is being set aside, rather than a default judgment").

The Court has broad discretion and great procedural flexibility under this "good cause" standard to grant relief from an entry of default where the facts demonstrate it is the equitable thing to do. *See Brady v. U.S.*, 211 F.3d 499, 504 (9th Cir. 2000); *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 690 (9th Cir. 1988). The same general factors evaluated under Fed. R. Civ. P. 60(b)(1) to determine whether relief from a default judgment should be granted (i.e., "mistake, inadvertence, surprise, or excusable neglect") are considered when determining whether "good cause" exists to grant relief from entry of default pursuant to Fed. R. Civ. P. 55(c). *See TCI Grp.*, 244 F.3d at 696; *Franchise Holding II, LLC*, 375 F.3d at 926; *Sims v. EGA Products, Inc.*, 475 F.3d 865, 868 (7th Cir. 2007); *Waifersong, Ltd. Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992).

The Court considers three factors when deciding whether to set aside an entry of default: (1) whether the defendant has a sufficient excuse for not meeting the filing deadline; (2) whether the defendant has a meritorious defense; and (3) whether setting aside default will unfairly prejudice the other party. *Madsen v. Bumb*, 419 F.2d 4, 6 (9th Cir. 1969); *Mendoza*, 783 F.2d at 945; *Franchise Holding II, LLC*, 375 F.3d at 925-926; *See Tri-Continental Leasing Corp. v. Zimmerman*, 485 F. Supp. 495, 497 (N. D. Cal. 1980). These factors are disjunctive, and the court may vacate entry of default if any of the three factors is true. *Franchise Holding II, LLC,* 375 F.3d at 926. In addition, "[t]he law does not favor defaults[,]" and "therefore, any doubts as to whether a party is in default should be decided in favor of the defaulting party." *Bonita Packing Co. v. O'Sullivan*, 165 F.R.D. 610, 614 (C.D. Cal. 1995). Furthermore, "[w]here timely relief is sought from a default . . . and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the [default] so that cases may be decided on their merits." *Mendoza*, 783 F.2d at 945-946. The Court's discretion and flexibility in

granting relief from a simple entry of default is even greater than in the context of seeking relief from a default judgment. *See Brady*, 211 F.3d at 504. When these factors are considered, relief from the entry of default against Undefined is warranted.

**B.  Good Cause Exists For The Default To Be Set Aside On The Basis Of Excusable Neglect**

As default judgments are generally disfavored, the Ninth Circuit has narrowly defined conduct that will qualify as culpable. In the Ninth Circuit, analysis of "culpability" for the purposes of demonstrating "good cause" under Rule 55(c) overlaps with the standard for "excusable neglect" under Rule 60(b)(1). *See TCI Grp.*, 244 F.3d at 696 (questioned on other grounds); *see also Meadows v. Dominican Republic*, 817 F.2d 517, 522 (9th Cir. 1987) (finding that the conduct of defendants in district court was culpable because defendants were aware of federal law and their intentional failure to respond to the action was not excusable neglect).

In *TCI Grp. Life Ins. Plan v. Knoebber*, the Ninth Circuit relied heavily on the Supreme Court's broad definition of excusable neglect in *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993), to find that even where a defendant had "receive[d] a pleading, read[] and underst[ood] it, and t[ook] no steps to meet the deadline for filing a responsive pleading," her conduct would not be considered culpable. *TCI Grp.*, 244 F.3d at 697. The court explained that to amount to being culpable, a defendant's conduct must be "'willful, deliberate, or evidence of bad faith.'" *Id.* (quoting *American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)). "Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process is not intentional under our default cases, and is therefore not . . . culpable or inexcusable." *TCI Grp.*, 244 F.3d at 698; *see also Pincay v. Andrews*, 389 F.3d 853 (9th Cir. 2004).

The default relief grounds of "surprise, inadvertence, or excusable neglect" all essentially boil down to an excusable neglect inquiry. *See Pioneer Inv. Serv. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 393-395 (1993); Fed. R. Civ. P. 55(c), 60(b)(1); Schwarzer et al., Rutter Group Practice Guide: Federal Civil Procedure Before Trial, Calif. & 9th Cir. Editions, Ch. 6-E, 6:164 (Thomson Reuters/West 2009) ("These terms all boil down to excusable neglect: i.e., has the moving party shown a reasonable

excuse for the default."). Where relief from entry of default is sought on the grounds of excusable neglect, all relevant circumstances must be taken into account in making an equitable determination as to whether the neglect was "excusable." *See Pioneer*, 507 U.S. at 395.

The Ninth Circuit finds a negligent failure to respond excusable if the defaulting party offers a credible, good-faith explanation for the delay that negates "any intention to take advantage of the opposing party, interfere with judicial decision-making, or otherwise manipulate the legal process." *TCI Grp.*, 244 F.3d at 697-698. Furthermore, in analyzing culpability, the Court may consider a defendant's exigent personal matters, her mental state, and her lack of familiarity with legal matters. *See Id.* at 699 (finding defendant's delay in response not culpable because she was grieving the death of her husband and was not familiar with the legal system).

Here, Undefined demonstrates that its neglect in responding to Plaintiffs' pleading was certainly excusable. Agent failed to inform and notify Undefined that it received Plaintiffs' Complaint or that it was served by the Plaintiffs, amounting to a failure on Agent's part to perform its obligations. Morris Decl. ¶ 9. Agent did not send Undefined or Ms. Morris scanned copies or physical copies of Plaintiffs' Complaint. *Id*. As a result of Agent's negligence, Undefined was never made aware of the filed Complaint until June 7, 2023 when Ms. Morris saw the Complaint in Agent's online digital portal. Morris Decl. ¶ 7, 9.

Plaintiffs may argue that they sent Undefined three cease and desist letters, dated January 11, 2023, January 24, 2023, and February 7, 2023, providing Undefined with notice of impending legal action. However, Undefined never received any physical copies of these cease and desist letters, and the emailed digital copies were lost in a spam folder. Morris Decl. ¶ 13, 15. Furthermore, the cease and desist letters were addressed to an entirely different company named Unidentified, Inc. located in Rowland Heights, CA. Morris Decl. ¶ 11. Considering these circumstances, Undefined was provided with insufficient notice. Regardless, these cease and desist letters did not provide notice of the lawsuit Plaintiffs filed at the end of March 2023.

Undefined's lack of response to Plaintiffs' Complaint is not culpable as it is not willful, deliberate, and fails to show evidence of bad faith. *See TCI Grp.*, 244 F.3d at 697. Undefined was not made aware that they had to respond to anything, let alone Plaintiffs' Complaint. Undefined's lack of

response is based on the failure of Agent as well as Plaintiffs' failure to send properly addressed correspondence regarding its legal claims. Undefined's lack of response is a perfect example of excusable neglect that is rooted in a "credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process." *Id* at 698.

Even if Undefined's lack of response is the result of its own actions or inactions as claimed by Plaintiffs, neglecting to respond to a pleading may be excusable if supported by credible reasons. *Id* at 697; *see also Owens-Illinois, Inc. v. T & N Ltd.*, 191 F.R.D. 522, 527-528 (E.D. Tex. 2000) (excusable neglect found where isolated human error in defendant's mailroom resulted in the complaint being lost despite procedures in place to handle such documents); *Standard Enterprises, Inc. v. Bag-It, Inc.*, 115 F.R.D. 38, 39 (S.D.N.Y. 1987) (relief from default granted where summons and complaint had inadvertently been put in a pile of junk mail). Here, Undefined's lack of response is the product of isolated human errors. Ms. Morris neglecting to regularly check her spam emails and Agent's failure to provide Undefined with notice of the legal action demonstrates this point.

As soon as Ms. Morris found out about Plaintiffs' Complaint on June 7, 2023, she took immediate action. Morris Decl. ¶ 8. She retained legal counsel on June 12, 2023, to address the Complaint expeditiously. Morris Decl. ¶ 11.  Her actions during those five days demonstrated vigilance and urgency.

Due to Agent's failure to notify Undefined regarding the Complaint and Plaintiffs' insufficiently delivered cease and desist letters, Undefined's lack of response is not culpable: its conduct is not willful, deliberate, or in bad faith, and there are credible good faith reasons to explain the lack of response. Ms. Morris acted reasonably given her circumstances after discovering the Complaint, and if Ms. Morris had received the Complaint without the interference of isolated human error, Undefined would have responded to the action without delay. Undefined had no intent to gain an advantage over the opposing party or to delay legal proceedings. As Defendant's delay in response was due to excusable neglect, the Court should find that Defendant's conduct was not culpable.

### C.  Undefined Has Meritorious Defenses To This Action

A defense is considered meritorious if "there is some possibility that the outcome of the suit after

1    a full trial will be contrary to the result achieved by the default." *Haw. Carpenters' Trust Funds,* 794

2    F.2d at 513. "A meritorious defense is not necessarily one which must, beyond a doubt, succeed in

3    defeating a default judgment, but rather one which at least raises a serious question regarding the

4    propriety of a default judgment, and which is supported by a developed legal and factual basis." *Jones v.*

5    *Phipps,* 39 F.3d 158, 165 (7th Cir. 1994); *Quach v. Cross,* 2004 WL 2862285 at *5 (C.D. Cal., Dec. 3,

6    2004). In addition, "where timely relief is sought from a default . . . and the movant has a meritorious

7    defense, doubt, if any, should be resolved in favor of the motion to set aside the [default]." *Mendoza,* 783

8    F.2d at 945-946. All that is required is an assertion of "a factual or legal basis that is sufficient to raise a

9    particular defense; the question of whether a particular factual allegation is true is resolved at a later

10   stage." *Audio Toys, Inc. v. Smart AV Pty Ltd.*, 2007 WL 1655793, at *3 (N.D. Cal., June 7, 2007).

11   Undefined has numerous meritorious defenses in response to the claims in Plaintiffs' Complaint.

12   The following is a non-exhaustive list of these meritorious defenses.

13       **1.  Copyright Infringement**

14   Undefined has various defenses available to it for Plaintiffs' copyright infringement claim. To

15   prove copyright infringement, Plaintiffs need to show Undefined had access to Ms. Xavier's Photograph

16   and that the Illustration is substantially similar to it. Undefined's first defense is that Undefined had no

17   access to Ms. Xavier's Photograph. At the time Ms. Morris purchased a license to use the Illustration and

18   subsequently used it on the R&R Sun Serum packaging, she did not know who Brittany Xavier was and

19   had never heard of her. Moreover, she did not follow Ms. Xavier's Instagram account or any other social

20   media platform where Thrifts and Threads' recently copyrighted Photograph was posted. She did not

21   have access to and did not see the Photograph prior to this action. Moreover, she did not know that the

22   purchased license of the Illustration was allegedly depicting or substantially similar to Ms. Xavier or her

23   image and likeness. Morris Decl., ¶ 5. Furthermore, Ms. Morris does regularly use Pinterest and has a

24   limited understanding of how it works, supporting the fact that she had no knowledge of where Ms.

25   Santos-Gaerlan found her points of reference to create the Illustration. Morris Decl., ¶ 18.

26   Next, Undefined's second defense is its possession of a valid license. The existence of a license,

27   whether exclusive or nonexclusive in nature, creates an affirmative defense to a claim of

28   copyright infringement. *See Graham v James,* 144 F.3d 229, 236 (2d Cir. 1998) (copyright owner who

grants nonexclusive license waives right to sue licensee for copyright infringement); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) ("Infringement cannot be founded on a licensed similarity"); *Nelson-Salabes, Inc. v. Morningside Development, LLC*, 284 F.3d 505, 514 (4th Cir. 2002) (implied nonexclusive license constitutes an affirmative defense"). Ms. Xavier is a Pinterest user. According to Pinterest's terms of service, users grant Pinterest and its users a non-exclusive, royalty-free, transferable, sublicensable, worldwide license to use, store, display, reproduce, save/download, modify, create derivative works, perform, and distribute the content users uploaded onto the platform. Smith Decl. ¶ 11. Since Ms. Xavier uploaded the Photograph as a user, Ms. Xavier has granted Ms. Santos-Gaerlan, another Pinterest user, a valid non-exclusive sublicensable license to create derivative works from the Photograph. Assuming arguendo that Ms. Santos-Gaerlan used the Photograph to create the Illustration, she sublicensed it to Ms. Morris for Undefined's use of the Illustration on R&R Sun Serum's packaging (Morris Decl. ¶ 3-6.). If Undefined's use of the Illustration originates from a valid license, then Undefined could not infringe upon Plaintiffs' copyrighted Photograph based on the Pinterest terms of service.

Undefined's third defense is fair use. Fair use has four factors: (i) the purpose and character of defendant's use, (ii) the nature of plaintiff's copyrighted work, (iii) the amount and substantiality of the portion used in relation to the copyrighted work as a whole, and (iv) the effect on the potential market for or value of Plaintiff's copyrighted work. For factor one, Undefined believes that the Illustration is sufficiently transformative based on Ms. Santos-Gaerlan's description of her unique artistic process even though Undefined's commercial use. Morris Decl. ¶ 16. Additionally, Undefined had no intent to copy or infringe upon Ms. Xavier's Photograph, as none of the parties involved in the creation of purchase of the Illustration knew who Ms. Xavier was or had ever seen the Photograph. Morris Decl. ¶ 5.  For factor two, Plaintiffs' work is a Photograph used in a paid partnership with the company Cartier, demonstrating an informational type of work rather than creative. Informational works have a greater scope of fair use. *See Stewart v. Abend*, 495 U.S. 207, 237-38 (1985). Additionally, photographs are generally harder to categorize according to their "nature" leading many courts to make a neutral finding on this second factor. *See Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 23 (1st Cir. 2000). This means that for the second factor, the Photograph is arguably informational in nature rather than creative, or at the

1   very least neutral.

2        For factor three, a defendant may be permitted to take a greater amount of copyrighted work

3   where there is a special need for accuracy. *See Meeropol v. Nizer*, 560 F.2d 1061, 1071 (2d Cir. 1977);

4   *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 804 (9th Cir. 2003). Copying the entirety of a

5   work is sometimes necessary to make a fair use of the image, and the fact that an entire work is

6   reproduced by the defendant may not weigh against a finding of fair use. *See Bill Graham Archives v.*

7   *Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2d Cir. 2006). Here, although it may appear the entirety or

8   quantitively significant amount of the Photograph has been allegedly copied, the aspects allegedly copied

9   contained certain non-copyrightable, non-protected elements such as the pose, lighting, and sunglasses.

10   Undefined has a special need to use these elements to invoke the ideas of brightness, the sun, the beach,

11   and glistening skin, which coincides with the advertised purpose of the R&R Sun Serum product.

12   Additionally, for the qualitative measures, the overall feel of the Illustration is not the same as the

13   Plaintiffs' Photograph. The Photograph is a portrait of a fashion model used to invoke the feeling of

14   luxury and high class. In contrast, Ms. Santos-Gaerlan's distinct art style and use of lighter colors in her

15   handmade digital illustration is cartoonish and less realistic, which gives a softer feel to show healthier

16   skin under the sun.

17        For factor four, the adverse effect of a defendant's alleged use of copyrighted material is a

18   question of market substitution. *See Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1179 (9th Cir. 2013)

19   (where the allegedly infringing use does not substitute for the original and serves a "different market

20   function" such factor weighs in favor of fair use). A work that is transformative will often be in a

21   different market from the original work and therefore less likely to cause harm to the original work's

22   market. *See Kelly v Arriba Soft Corp.*, 336 F.3d 811, 821 (9th Cir. 2002). Where the defendant's use has

23   no effect on the potential market of plaintiff's work, the fair use defense is likely to be upheld. *See Sony*

24   *Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 450 (1984); *Kelly*, 336 F.3d at 821. Ms.

25   Xavier is an influencer who participates in the influencer market as a content creator on social media.

26   Ms. Xavier is also a model who creates photographs to build portfolios and secure photography

27   opportunities, and the specific photo of Ms. Xavier is a paid partnership with a jewelry company. In

28   contrast, Undefined is a skincare company that develops a line of non-toxic, plant-based and cruelty free

skincare products designed to be inclusive and diverse. The two works are not direct market substitutes as they serve different market functions. Undefined's usage of the Illustration does not have a substantial effect on Ms. Xavier's primary markets. Additionally, even if the skincare industry is considered a potential market for Ms. Xavier, Undefined's usage of the Illustration would not impede Ms. Xavier's ability to monetize her other photographs and work with other skincare companies. As a result, Undefined has a meritorious fair use defense against the Plaintiffs' copyright infringement claim.

Undefined's next two available defenses are copyright misuse and unclean hands. Copyright misuse is an equitable defense where a copyright is used in a manner violative of the public policy, and a nexus between the copyright holder's actions and the grant of a copyright must exist. *See Shloss v. Sweeney*, 515 F.Supp.2d 1068, 1074 (N.D. Cal. 2007). Unclean hands is an equitable defense that bars the protection of otherwise protectable material. *See Saxon v. Blann*, 968 F.2d 676, 680 (8th Cir. 1992). The copyright holder's conduct needs to be inequitable and relate to the subject matter of the copyright holder's claims of infringement. *See Brother Records, Inc. v. Jardine*, 318 F.3d 900, 909 (9th Cir. 2003). Here, Plaintiffs registered the Photograph as copyright on March 14, 2023, despite the Photograph being taken on or around August 3, 2018, almost five years after the Photograph's creation. Plaintiffs filed their claim on March 31, 2023. Undefined believes that Plaintiffs registered the Photograph for the sole purpose of filing this claim. Additionally, in the cease and desist letters sent prior to the registration of the Photograph, the letters claimed that if Undefined did not respond, Plaintiffs would take legal action by filing a copyright infringement claim against Undefined despite their failure to register the Photograph. Plaintiffs used the benefits granted by copyright registration against Undefined in a way that violated public policy by intimidating and misrepresenting facts to litigation opponents, which is inequitable conduct that may be argued as sufficient to show misuse of copyright and unclean hands by Plaintiffs.

Lastly, Undefined may use defenses to address statutory damages and attorney's fees. Because Undefined did not know who Mx. Xavier was or the existence of the original Photograph, Undefined's use would not be considered willful copyright infringement. Contrary to Plaintiffs' assertions in its Complaint, Undefined did not see the Photograph posted by Ms. Xavier -- or the cease and desist letters Plaintiffs sent -- and therefore statutory damages would not be proper pursuant to 17 U.S Section 504(1)

and (2). Furthermore, since Undefined's alleged infringement began prior to Ms. Xavier's registration of the copyright of the Photograph, Plaintiffs are limited to non-statutory damages and cannot be awarded attorney's fees. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 700-702 (9th Cir. 2008). Therefore, Plaintiffs are barred from recovering statutory damages and attorney's fees. As a result, Undefined has several meritorious defenses to this copyright infringement claim.

### 2. Publicity Rights Violations Based On California State Law

Undefined has three defenses against Plaintiffs' claims under California statutory and common law rights of publicity. The first defense is that these publicity rights claims are preempted by federal copyright law. A right of publicity claim (either statutory or under common law) fails if it is too similar to a copyright claim; if this occurs, the state right-of-publicity law is preempted by federal copyright law. *See Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137-1145 (9th Cir. 2006); *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663 (7th Cir. 1986). Here, the right of publicity claims are centered around Undefined's alleged usage of Ms. Xavier's image and likeness by Undefined allegedly copying Ms. Xavier's Photograph. This is also attached to the same Complaint and brought under this Court's supplemental jurisdiction because of the copyright infringement claim. Since the right of publicity claims are centered around the same facts, parties, and materials, these claims raised in the Complaint are too similar and should be preempted. In the alternative, if the claims are not preempted, Undefined can raise the defense of accidental misappropriation, as Undefined did not knowingly use Ms. Xavier's image and likeness. For both the statutory and common law personality rights claims, Undefined can additionally raise the defense of no misappropriation as Undefined was not the one who created the Illustration that was used in its packaging, and it had no knowledge that the Illustration allegedly used Ms. Xavier's image and likeness based on Ms. Santos-Gaerlan's representations. As a result, Undefined has various meritorious defenses to these state law publicity rights claims.

### 3. Claims Based On Lanham Act

Undefined additionally has defenses against claims based on the Lanham Act. Plaintiffs are bringing Unfair Competition and False Endorsement claims under the Section 1125(a) of the Lanham Act. Plaintiffs do not assert that they have a registered trademark. Section 1125(a)(1) of the Lanham Act states that "any person who, on or in connection with any goods or services, or any container for goods,

uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which: (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act." 15 U.S. Code § 1125(a).

The Lanham Act does not allow all allegedly injured plaintiffs to recover; instead, courts look to two background principles to determine standing: zone of interests and proximate causality. *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014). To come within the zone of interests in a suit for false advertising under Section 1125(a), the plaintiff must allege an injury to a commercial interest in reputation or sales. *Id.* at 131-132. Proximate causation prevents a plaintiff from bringing a claim that alleges harm too remote from the defendant's unlawful conduct. Under Section 1125(a) of the Lanham Act, plaintiffs ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising, and that occurs when deception of consumers causes them to withhold trade from the plaintiff. *Id.* at 133-134. Additionally, the Ninth Circuit has a long standing list of factors it weighs in determining the likelihood of consumer confusion in trademark-infringement cases: (1) the strength of the mark; (2) the proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used to promote the products; (6) the type of goods and the carefulness of likely consumers; (7) the defendant's intent; and (8) the likelihood that either party will expand into new markets. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir. 1979).

Here, Plaintiffs have not alleged sufficient facts to show they have standing to bring this suit. The Complaint fails to allege facts that demonstrate sufficient economic or reputational injury flowing directly from the deception wrought by the Undefined's alleged use of the Photograph. There is also no mark at the center of this case, as the Plaintiffs claim the rights are associated with her "name, image, likeness, and persona" which may give rise to a failure to state a claim defense. Additionally, Plaintiffs

1   failed to allege facts that show: (1) the strength of their mark; (2) the close proximity of the goods; (3)

2   any evidence of actual confusion; (4) the existence of the same marketing channels to promote the same

3   products; (5) the type of goods and the carefulness of likely consumers; (6) any malicious or willful

4   intent by Undefined to use Ms. Xavier's image and likeness; and (7) the likelihood that either party will

5   expand into new markets.

6        Additionally, Undefined can bring a classic fair use trademark defense. Classic fair use occurs

7   when a "defendant has used the plaintiff's mark to describe the defendant's own product". *Cairns v.*

8   *Franklin Mint Co.*, 292 F.3d 1139, 1150-1151 (9th Cir. 2002). Under the common law classic fair use

9   defense, a junior user is "always entitled to use a descriptive term in good faith in its primary, descriptive

10  sense other than as a trademark". *Id*. To establish a classic fair use defense, a defendant must prove the

11  following three elements: (1) defendant's use of the term is not as a trademark or service mark; (2)

12  defendant uses the term "fairly and in good faith"; and (3) defendant uses the term only to describe its

13  goods or services. *Id*. Here, Undefined can argue that the specific elements allegedly taken from the

14  Photograph, such as the pose, sunglasses, and jewelry, are not considered a trademark or service mark

15  under these factors. Undefined may argue that this use was fair and in good faith considering its lack of

16  knowledge regarding Ms. Xavier identity and lack of knowledge regarding Ms. Xavier's original

17  Photograph. Undefined also may argue that its alleged use of the "mark" is a descriptive use, considering

18  the Illustration is used to demonstrate the product's use and desirable outcomes of said use. Thus,

19  Undefined has the option to bring a meritorious classic fair use defense to these claims.

20        **4.   Unfair Competition And False Advertising Based On California State Law**

21        California's Unfair Competition Law ("UCL") prohibits unfair competition which is defined as

22  any unlawful, unfair, or fraudulent business act or practice and prohibits unfair, deceptive, untrue or

23  misleading advertising. Cal. Bus. & Prof. Code, § 17200. To have standing to bring this claim, a plaintiff

24  must allege facts showing he or she suffered an economic injury caused by this alleged violation. Here,

25  Plaintiffs did not allege any facts showing they suffered any economic injury, which means Plaintiffs do

26  not have standing. To state a cause of action based on an "unlawful" business act or practice under the

27  UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law. *Rockridge Trust*

28  *v. Wells Fargo*, 985 F.Supp.2d 1110, 1165-1166 (N.D. Cal. 2013). Here, Undefined will assert  the same

1    meritorious defenses as previously discussed in this Motion against claims of unlawful acts.

2         Unfair acts and practices are acts that offend an established public policy or when the practice is

3    immoral, oppressive or essentially injurious to consumers. There are three distinct lines of tests used in

4    the California courts. The test applied in one line of cases requires the violated public policy to be

5    tethered to a specific constitutional, statutory, or regulatory provision. A second line of cases applies a

6    test to determine whether the alleged business practice is immoral, unethical, oppressive, unscrupulous or

7    substantially injurious to consumers, and requires the court to weigh the utility of the defendant's

8    conduct against the gravity of the harm to the alleged victim. The test applied in a third line of cases

9    draws on the definition of "unfair" in Section 5 of the FTCA and requires that the *consumer injury* must

10   be substantial; the injury must not be outweighed by any countervailing benefits to consumers or

11   competitions; and it must be an injury that *consumers themselves* could not reasonably have avoided. *Id*.

12        Here, under the first test, the claim can be tethered to statutory copyright law, and the same

13   defenses for copyright infringement previously raised would apply here. Under the second test, the utility

14   of Undefined's conduct of being able to use an Illustration on packaging outweighs the gravity of the

15   alleged harm to the Plaintiffs, as Ms. Xavier is not prohibited from using the specific Photograph in a

16   commercially significant way and it is only one of many photographs Ms. Xavier may produce. As for

17   Undefined, its integral mission and value of inclusivity and diversity in beauty coincides in using generic

18   illustrations of women on their packaging, and taking away Undefined's ability to do that is far more

19   detrimental to Undefined than Ms. Xavier's loss of one Photograph. Under the third test, there are no

20   facts that indicate a *consumer injury* has occurred here. The only potential injury alleged by Plaintiffs'

21   Complaint is a personal one of Ms. Xavier who is not a consumer. Under all three tests, Undefined has

22   meritorious defenses it may raise to this particular claim.

23        Fraudulent business act or practice does not refer to the common law tort of fraud, but only

24   requires a showing that members of the public are likely to be deceived. UCL claims premised on

25   fraudulent conduct trigger the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil

26   Procedure. *Id*. Here, Plaintiffs did not allege facts that show whether the public were likely to be

27   deceived. This demonstrates a failure to meet the heightened pleading standard of Rule 9(b) of the

28   Federal Rules of Civil Procedure, which states that "a party must state with particularity the

1   circumstances constituting fraud or mistake, malice, intent, knowledge, and other conditions of a person's

2   mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiffs did not allege any facts that show with

3   particularity that Undefined acted with malice, intent, and knowledge. On the contrary, the facts indicate

4   the lack of this prerequisite malice or intent. Morris Decl. ¶ 4-6.

5   　　　Here, Plaintiffs lack standing under Cal. Bus. Prof. Code §17500. A party has standing to bring a

6   claim under California false advertising law only if they establish that they suffered economic injury or

7   damage and this injury or damage was caused by *false advertising*: this is the gravamen of the claim. *See*

8   *Shaeffer v. Califia Farms, LLC*, 44 Cal.App.5th 1125, 1137 (2020); *see also Kwikset Corp. v. Superior*

9   *Court*, 51 Cal.4th 310, 322-326 (2011). To prove the second element of causation, the plaintiff must

10  show that they relied on the allegedly deceptive or misleading statement and that it was an immediate

11  cause of his or her injury. *Id.* at 326-327. Here, Plaintiffs lack standing for failing to allege facts that

12  show they suffered economic injury that was caused by reliance on an allegedly deceptive or misleading

13  statement. Undefined made no allegedly deceptive or misleading statements. Undefined simply used an

14  Illustration that Plaintiffs claim copied Ms. Xavier's Photograph. This false advertising claim is the

15  gravamen of Plaintiff's Complaint and Plaintiff's alleged injury was not a result of deceptive or

16  misleading statements.

17  　　　More importantly, Plaintiffs' claims under Cal. Bus. Prof. Code §17200 and §17500 are

18  preempted by federal copyright law. State law causes of action are preempted by the Copyright Act if the

19  rights asserted under state law are rights that are equivalent to those protected by the

20  Copyright Act, and the work involved must fall within the subject matter of this Act. *Kodadek v. MTV*

21  *Networks, Inc.*, 152 F.3d 1209, 1212-1213 (9th Cir. 1998). Preemption analysis involves determining

22  whether the state law claim contains an element not shared by the federal law; an element which changes

23  the nature of the action so that it is qualitatively different from a copyright infringement claim. This

24  analysis should apply to each theory of unfair competition to determine whether it contains a

25  qualitatively different extra element distinguishing it from copyright protection. *Summit Mach. Tool Mfg.*

26  *Corp. v. Victor CNC Systems, Inc.*, 7 F.3d 1434, 1339-1440 (9th Cir. 1993).

27  　　　Here, the state law unfair competition and false advertisement claims center around Undefined's

28  use of the Illustration that allegedly infringes on Ms. Xavier's copyright. The additional "elements" of

such claims, such as damages, would be determined at trial for a copyright infringement claim and the unfair, unlawful, fraudulent, or misleading acts required by these state law claims was the use of the Illustration itself as an alleged infringement of copyright. Plaintiffs may attempt to point to the image and likeness rights as basis for these state law unfair competition and false advertisement claims, but those issues should also be preempted. In other words, no additional discernible elements can be found that would distinguish these claims to be qualitatively different from copyright infringement and copyright protection. As a result, Undefined has meritorious defenses to these state law unfair competition and false advertising claims: Plaintiffs lack standing to bring these claims, and the claims should be preempted by federal copyright law. As of this version of the Complaint, Undefined is considering filing a motion to dismiss these claims with the Court in a subsequent filing which the Court should grant based on the above.

### 5.  Procedural Defenses

Federal Rules of Civil Procedure Rule 12(b) states that "a party must assert the following defenses by motion: … (3) improper venue; … (6) failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b). Undefined has a meritorious defense under Rule 12(b)(3) for improper venue in support of this Motion. *See Aiyegbusi v. Knight*, 2008 WL 370619, at *3 (E.D. Pa., Feb. 7, 2008) (where the court held that improper venue serves as a meritorious defense and thus supports vacating the default judgment since the defendant has set forth with some specificity the grounds for her defense of improper venue). Undefined also has a meritorious defense in Rule 12(b)(6) for failure to state a claim upon which relief can be granted in support of this Motion. *Id.* at 4 (where the court held that failure to state a claim which relief can be granted provides defendant with a meritorious defense which supports a decision to vacate the default judgement as defendant has set forth with some specificity grounds that would constitute a complete defense). Undefined's Rule 12(b)(3) and (6) defenses can be raised in this Motion or in the subsequent responsive pleading to Plaintiffs' Complaint.

In terms of improper venue based on Rule 12(b)(3), Plaintiffs brought this action in the Northern District of California. In their Complaint, Plaintiffs stated that this Court is the proper venue for this action as Ms. Morris resides in this judicial district and that the substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district pursuant to 28 U.S. Code § 1391(b) and (c). 28 U.S.

Code § 1391(b) states that "a civil action may be brought in— (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action".  28 U.S. Code § 1391(b). 28 U.S. Code § 1391(c) states that "for all venue purposes— (1) a natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the judicial district in which that person is domiciled; (2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business; and (3) a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants." 28 U.S. Code § 1391(c).

Undefined is a Delaware corporation with its principal place of business located in Los Angeles, California which means, for venue purposes, Undefined is a resident of Los Angeles, California. Ms. Morris, Undefined's Founder/CEO, purchased a license to the allegedly infringing Illustration in Los Angeles, California, as Ms. Morris resides there. The use of this purchased Illustration constitutes the entirety or a substantial part of this action that gives rise to Plaintiffs' claims. Because a substantial part of the events and property that is the core subject of the action took place in Los Angeles, California, Undefined's principal place of business/residency is in Los Angeles, California, and Ms. Morris is a resident of Los Angeles, California, pursuant to 28 U.S. Code § 1391(b) and (c), the proper venue for this action is the district in which Los Angeles, California is located in: the Central District of California. Thus, the United States District Court for the Central District of California is the proper venue for this action.

As for Undefined's defenses pursuant to Rule 12(b)(6), a party may bring a Rule 12(b)(6) motion to dismiss specific claims insufficiently pled by a plaintiff. For the purposes of this action, Undefined identifies the following claims that have been insufficiently pled: the Violation of the California

Statutory Right of Publicity claim pursuant to Cal. Civ. Code § 3344; the Violation of the California

Common Law Right of Publicity claim under California state common law; the False Endorsement and

Unfair Competition claim under the Lanham Act (15 U.S. Code § 1125(a); Unfair Competition under

California state law claim pursuant to Cal. Bus. & Prof. Code § 17200; and False Advertising under

California state law claim pursuant to Cal. Bus. & Prof. Code § 17500.  For these claims, Undefined may

raise a Rule 12(b)(6) defense. As a result, Undefined may raise these procedural meritorious defenses in

this action.

### D.  No Harm Or Prejudice Will Result If The Default Is Set Aside

Prejudice turns on whether a Plaintiff's ability to purse its claims will be hindered if default is set

aside. *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). "To be prejudicial, the setting aside of a judgment

must result in greater harm than simply delaying resolution of the case." *TCI Grp.*, 244 F.3d at 701. The

fact that a party may be denied a quick victory is not sufficient to deny relief from default judgment.

*Bateman v. U.S. Postal Service*, 231 F.3d 1220, 1225 (9th Cir. 2000).

Delay alone does not constitute prejudice unless it "will 'result in the loss of evidence, create

increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *Davis v.

Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (citation omitted).  "The delay must result in tangible harm

such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or

collusion." *Audio Toys*, 2007 WL 1655793, at *3.

There is no prejudice to the plaintiff where the setting aside of the default has done no harm to

plaintiff except to require it to prove its case. *Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000); *TCI

Grp.*, 244 F.3d at 701 (finding that prejudice requires "greater harm than simply delaying resolution of

the case" and must hinder plaintiff's ability to pursue a claim, because "merely being forced to litigate on

the merits cannot be considered prejudicial"). In this case, the only activities that have occurred are

Plaintiffs filing the Complaint and motion for entry of default. Undefined has not filed any response or

other filings prior to this Motion. This case is in its early stages and as a result, the only harm to the

Plaintiffs is to require them to prove their case and litigate their claims on the merits. This alone cannot

be considered prejudicial. If the Court sets aside this entry of default, Plaintiffs will still have the ability

to litigate their case, and they are able to do so without the loss of evidence or facing additional burdens

to discovery. Setting aside this default does not facilitate fraud or collusion. Although there has been a minor delay in litigation, delay alone is not enough to be considered prejudicial, especially when Undefined has not filed anything with this Court prior to this Motion.

More importantly, as soon as Undefined found out about Plaintiffs' Complaint on June 7, 2023, its Founder/CEO, Ms. Morris, contacted legal counsel on the same day who informed her that she needed to find an attorney licensed in California. Morris Decl. ¶ 7. After a diligent search, Undefined retained Mr. Smith expeditiously after becoming aware of this action. Smith Decl. ¶ 11. Undefined acted diligently in responding to Plaintiffs in the span of five days to minimize any further delay.

Undefined filed this Motion as promptly and as reasonably possible considering all the circumstances up to this point, thus avoiding any further delays to Plaintiffs. Undefined additionally makes this filing within a reasonable time following the entry of default to minimize further prejudice to the Plaintiffs. *Knoebbe*r, 244 F.3d at 701. There has not been any significant expenditure of time or resources by Plaintiffs, or any tangible harm or of any ability to pursue their claims on the merits, and therefore, Plaintiffs have not been prejudiced in any manner that would suggest the entry of default should stand. *See Knoebber*, 244 F.3d at 701.

Since there would be no resulting prejudice against Plaintiffs, Undefined respectfully asks the Court to grant its Motion to set aside the entry of default so that this case can be litigated based on the merits.

### E.  Law and Public Policy Favors Decisions On The Merits

As an over-arching principle, Courts favor trials and decisions on the merits with full participation by all parties over default judgments. *See Klapprott v. U.S.*, 335 U.S. 601 (1949); *Schwab*, 508 F.2d at 355-356 ("[D]efault judgments are generally disfavored; whenever it is reasonably possible, cases should be decided on their merits," and "[w]here timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits"). This strong public policy in favor of courts resolving disputes based on the merits is intended to facilitate fair and equitable judgements.

The entry of default should be set aside because of this public policy preference. There is ample evidence supporting Undefined's claim of excusable neglect and Undefined is entitled to the benefit of

the doubt and the opportunity to present the merits of its defenses rather than be unfairly penalized for events outside of its control. Due process limits the imposition of the severe sanctions of dismissal or default judgment to "extreme circumstances" and such sanctions are not to be imposed merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case. *See Wyle v. R J. Reynolds Industries Inc.,* 709 F.2d 585, 589 (9th Cir. 1983). By virtue of the public policy preference of Courts against default judgments as expressed in previous decisions, Undefined's Motion to set aside the entry of default should be granted so that Undefined can fairly make its case and have this dispute decided on its merits.

## IV.   CONCLUSION

Defendant Undefined has demonstrated good cause under Federal Rule of Civil Procedure 55(c) for setting aside the entry of default rendered against it based on Undefined's excusable neglect as described above. Undefined contacted counsel for Plaintiffs through its attorney both by email on June 13, 2023 as well as over the phone on June 20, 2023 asking them to stipulate to set aside the entry of default, and opposing counsel denied this request. For all the foregoing reasons, Defendant Undefined respectfully requests that the Court grants its Motion and set aside the entry of default rendered against Undefined as Docket No. 13 in this action on May 19, 2023, as well as set Undefined's deadline to respond to Plaintiffs' Complaint for the date that is twenty-one (21) days following the Court's granting of this Motion. Alternatively, the Court can dismiss the case for improper venue or transfer it to the United States District Court for the Central District of California.

Dated:  June 26, 2023                                        ARS COUNSEL P.C.

By:  /s/Almuhtada Smith
_____
ALMUHTADA SMITH

Attorney for Defendant Undefined Inc.